UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CORI QUINN,

                        Plaintiff,

      v.

THE BOARD OF EDUCATION OF THE
CALEDONIA-MUMFORD CENTRAL
SCHOOL DISTRICT, PAUL ESTABROOKS,
INDIVIDUALLY AND AS AIDER AND
ABETTOR and ROBERT MOLISANI,
SUPERINTENDENT, INDIVIDUALLY
AND AS AIDER AND ABETTOR,

                        Defendants.

_____

**COMPLAINT**

Civ. No. _____

Plaintiff, Cori Quinn, by her attorneys, Underberg & Kessler LLP, Jennifer A. Shoemaker, Esq., of counsel, alleges in the Complaint as follows:

### JURY DEMAND

1.  Plaintiff, Cori Quinn, demands a trial by jury of all issues in this action.

### PRELIMINARY STATEMENT

2.    Plaintiff, Cori Quinn, seeks to recover damages against Defendants the Board of Education of the Caledonia-Mumford Central School District, Paul Estabrooks, individually and as Principal of Caledonia-Mumford Middle School, and Robert Molisani, individually and as Superintendent of Caledonia-Mumford Middle School for unlawful discrimination, hostile work environment, sexual harassment, and retaliation based upon Plaintiff's sex and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., (hereinafter "Title VII"), 42 U.S.C. § 1983 (hereinafter "§ 1983"), the New York State Human Rights Law § 290 et seq. of the Executive Law of the State of New York (hereinafter "Human Rights Law").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the Plaintiff's claims on this action pursuant to the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. § 2000e-5(f)(3)(Title VII),. 28 U.S.C. § 1331, and 28 U.S.C. § 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiff's claims under state statutory law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

5.      Plaintiff is an adult female and currently resides at 3971 Federal Road, Livonia, New York.

6.      Defendant Caledonia-Mumford Central School District ("Cal-Mum" or "District) is a public central school district established under and operating pursuant to Article 37 of the Education Law of the State of New York. The District's administrative offices are located at 99 North Street, Caledonia, New York.  The Board of Education is the governing body of the District.

7.      Defendants Paul Estabrooks and Robert Molisani are, upon information and belief, adult male residents of the State of New York.

8.      At all relevant times, Defendant Estabrooks is and has been an employee of Cal-Mum and is the Principal of the Middle School in Caledonia, New York.

9.      At all relevant times Defendant Molisani is and was the Superintendent of Cal-Mum and his offices are located at 99 North Street, Caledonia, New York.

10.     Upon information and belief, Defendant Cal-Mum is, and at all times mentioned, was authorized to do business in the State of New York.

11.     Defendants Estabrooks and Molisani are persons subject to the mandates of §1983.

12.     The Defendant, Cal-Mum, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

13.     The Defendant, Cal-Mum, is also an employer as defined in §292(5) of the Human Rights Law.

14.     At all relevant times, Plaintiff took direction from the Defendants.

15.     At all relevant times, the Defendants jointly exercised control over the terms and conditions of Plaintiff's employment.

16.     Upon information and belief, the Defendants and their agents jointly made the decisions that led to the violation of the Plaintiff's rights under § 1983, Title VII, and the Human Rights Law.

17.     On May 20, 2016 Plaintiff sent a letter outlining her claims of discrimination to the Cal-Mum Board of Education.

18.     The letter described the nature of Plaintiff's claims, the time when her claims arose, and the place and manner in which her claims arose.

19.     As a result of her letter to the Board of Education, Defendants investigated her claims, but did not resolve her concerns.

20.     Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") on May 31, 2016 which was duly filed with the Equal Employment Opportunity Commission.

21.     Plaintiff filed a related complaint with the New York State Division of

Human Rights ("DHR") on July 20, 2016 which was duly filed with the Equal Employment Opportunity Commission.

22.    On August 17, 2016, Plaintiff received a right to sue letter from the EEOC for both matters and this complaint has been timely filed herein.

23.    By and through their course of conduct as alleged above, Defendants' agents willfully violated Title VII, § 1983 and the Human Rights Law by subjecting the Plaintiff to a hostile work environment, discriminating against the Plaintiff and denying her equal terms and conditions of employment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

24.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

25.    During the 2015-2016 school year, Plaintiff was targeted, harassed and retaliated against in various ways by the District, designed to drive Plaintiff from her teaching position and to make her work environment unbearable and hostile.

26.    This harassment and retaliation has also caused Plaintiff to experience and suffer from medical and health problems for which she has had to seek emergency and long-term medical care, as well as prescription medication for the stress, anxiety and depression she has suffered for being targeted and harassed at work.

## FACTUAL
## BACKGROUND

27.    Plaintiff began working for Cal-Mum as a part time teacher in 2013 and was rated as a "highly effective" teacher by Cal-Mum for both the 2013-2014 and 2014-2015 school years

4

28.     While she was a part time employee, she was supervised by Merritt Holly, the High School Principal.

29.     Because of her success as a part time teacher, Plaintiff was offered a full time teaching position for the 2015-2016 school year, where her duties would be split between the high school and middle school, which she accepted.  Because she was a new full-time teacher, Plaintiff had a three year probationary period.

30.     In her new full time position, Plaintiff reported to both Merritt Holly and Middle School Principal, Paul Estabrooks.

31.     Once she was assigned to the Middle School, Defendant Estabrooks began sexually harassing Plaintiff.  He frequently made comments that she "looked too young to have kids" and that her mannerisms were "cute."

32.     In fact, in October, 2015, Estabrooks told Plaintiff "you don't look old enough for children."

33.     During the same time frame, Estabrooks told Plaintiff "you don't look a day over 22."

34.     Estabrooks also told Plaintiff "you must be loving life."

35.     Estabrooks also compared Plaintiff to another teacher who is "young" and "blonde."

36.     In fact, Estabrooks called Plaintiff by the other teacher's name at least 5 times during the beginning of the school year.

37.     Estabrooks called Ms. Quinn's mannerisms "charming."

38.     On several occasions, other teachers were present and heard Estabrooks describe Plaintiff as "charming" and "cute."

39.     Plaintiff was afraid to complain about Estabrooks' treatment of her for fear she would not be granted tenure.

40.     On or about October 7, 2015, Plaintiff observed Estabrooks pace outside of her classroom doorway approximately 6 to 7 times during her preparatory period when no one else was present.

41.     After pacing, Estabrooks stopped outside her doorway without being visible and said, "Ms. Quinn, I want you to know I am coming in now."

42.     Estabrooks then entered her classroom to discuss an essay contest sponsored by the local VFW.

43.     Estabrooks' conduct made Plaintiff extremely uncomfortable.

44.     On or about October 9, 2015, Plaintiff attended a conference day with several colleagues, including Estabrooks.

45.     Estabrooks made note of the shirt Plaintiff was wearing.

46.     Estabrooks was tasked with giving post-it notes to each table.  Estabrooks reached over Plaintiff's shoulder and intentionally placed a package of post-it notes in her lap, making physical contact with her upper, middle lap.

47.     Another teacher, Kylie DiTucci, who was present looked surprised by Estabrooks' behavior and stated, "that was really weird."

48.     Estabrooks placed the post-it notes for all of the other groups on their tables.

49.     Plaintiff was stunned and uncomfortable and felt the conduct was sexual in nature.

50.     A couple of weeks later, Plaintiff and Estabrooks scheduled a pre-

6

observation conference for 6:30am on October 26, 2015. There were few employees in the building at the time and it made Plaintiff very uncomfortable to meet with Estabrooks alone in the building.

51.     In November, 2016, Plaintiff had a formal observation by Defendant Estabrooks. Contrary to requirements, Estabrooks did not provide written feedback to Plaintiff but did describe her mannerisms as "cute" during a post observation meeting.

52.     In fact, Estabrooks stated, "you continue to ask questions when asked a question, that is really cute."

53.     Plaintiff and her co-teacher, Veronica Barbis felt the observation went well and were shocked to hear that Estabrooks did not agree.

54.     Later that month, at a data day conference, Estabrooks commented to Plaintiff that she was "cute" and that "you are so cute," two or three times in front of another teacher, Veronica Barbis.

55.     On or about November 24, 2015, Estabrooks, Plaintiff's then mentor, Chad Schalk and Plaintiff had a post-observation conference. Again, Estabrooks referred to Plaintiff as "cute" several times and said she was "charming."

56.     These comments made Plaintiff feel uncomfortable and she felt they were based on her gender.

57.     In December, Estabrooks hosted a Christmas party that Plaintiff felt she had no choice but to attend. He offered her a glass of wine, which she declined and then offered her a bottle to take home, which she also declined. Estabrooks began mocking her because she refused to take the wine.

58.     Plaintiff felt so uncomfortable around Estabrooks because of his

inappropriate conduct that, in January 2016, she brought someone with her to a meeting he had scheduled in the morning before the school day began so she would not be alone with him. Because her teacher mentor was unavailable, she brought her union steward with her.

59.     Estabrooks was visibly upset that she brought someone with her to the meeting and acted very defensively about the purpose of the meeting.

60.     Plaintiff told her union steward she was uncomfortable around Estabrooks.

61.     Because she did not respond favorably to Estabrooks' treatment of her, Plaintiff began receiving negative evaluations from him.

62.     In February, 2016, Estabrooks observed Plaintiff teaching in her classroom.   Plaintiff felt the lesson went extremely well and was shocked when Estabrooks gave her a very poor review, which she felt was in retaliation for her refusal to accept Estabrooks' advances.  In fact, Plaintiff had a co-teacher in the room who was also shocked that Plaintiff received a poor review on the lesson.

63.     In April, 2016, Plaintiff received another bad review.

64.     Estabrooks devised a plan to assist Plaintiff with her performance, including switching mentors, working with others on the faculty, and focusing on specific areas of improvement.

65.     Ironically, one of the items Estabrooks found deficient in Plaintiff's performance was her "opening" for the class.  Estabrooks was 10 minutes late to the observation and missed her opening.

66.     Plaintiff followed through on all aspects of Estabrooks' plan.

67.     Despite her completion of the required tasks, Estabrooks sent emails to Plaintiff accusing her of not following through with the tasks assigned.  She responded with documentation demonstrating that she had completed the tasks.

68.     One complaint Estabrooks had about Plaintiff was that she was behind in her state curriculum.  Many seasoned veterans at Cal-Mum were behind in the state curriculum.

69.     Shortly thereafter, it was at this time that Plaintiff felt she had no choice but to report Estabrooks' harassment of her and the subsequent retaliation, and she reported her claims in a letter to the Board of Education in May 2016.

70.     Plaintiff previously did not complain because she feared she would lose her job if she did so.

71.     In fact, when she reported her concerns to the union representative, he responded that things "now made sense."

72.     The District investigated Plaintiff's allegations and, incredibly, found them to be without merit, despite having at least two other female staff members report that they too were subjected to unwelcome conduct by Estabrooks because of their gender.

73.     In April 2016 Defendant Molisani told Plaintiff he would recommend termination at the next Board of Education meeting.  Plaintiff decided to resign rather than be terminated.

74.     Molisani based his recommendation to terminate on observations conducted by Plaintiff's harasser, Estabrooks.

75.     Molisani never observed Plaintiff's performance himself.

76.     In fact, Plaintiff's mentor, Lisa D'Angelo, observed Estabrooks treating

Plaintiff in an atypical manner during an observation she also attended. D'Angelo, who had worked at the district for seventeen (17) years, was "shocked" at how severe the meeting was. She has never been treated in a similar manner by Estabrooks.

77.     D'Angelo has never seen anyone treated similarly to the way Estabrooks treated Plaintiff.

78.     D'Angelo felt strongly that Estabrooks had an "agenda" for Plaintiff to lose her job.

79.     D'Angelo herself was visibly shaking when she walked out of the meeting because of how severe Estabrooks' behavior was.

80.     When Plaintiff reported solely to Mr. Holly he had no concerns with her performance as a teacher.

81.     He also said that prior to January, 2016, there were no issues with Plaintiff's performance.

82.     Even though the teacher in Plaintiff's position just prior to Plaintiff had been formally evaluated by both Holly and Estabrooks, Plaintiff was only formally evaluated by her harasser, Estabrooks.

83.     In June, 2016, Plaintiff filed a complaint with the New York State Division of Human Rights alleging sexual harassment, gender discrimination and retaliation.

84.     Thereafter, an investigation was commenced regarding the allegations where at least two (2) other female teachers came forward to complain about Estabrooks' treatment of them.

85.     One said Estabrooks told her he likes his women "tall and skinny".

86.    Indeed, Estabrooks has demonstrated a pattern of making inappropriate comments to non-tenured female teachers who are in vulnerable positions.

87.    Women are afraid to complain against Estabrooks for fear they will be forced out, like Plaintiff.

88.    Estabrooks has also made comments about the way women smell.

89.    Estabrooks also compared Plaintiff to a former teacher who no longer works at the district and who is also attractive and blonde.

90.    Neither Estabrooks nor Molisani approached D'Angelo as Plaintiff's mentor to seek input or to assist Plaintiff's performance.

91.    High School Principal Merritt Holly did not observe any performance issues with Plaintiff until after she failed to respond favorably to Estabrooks and Estabrooks started documenting Plaintiff's performance.

92.    After being told that Defendant Molisani would recommend Plaintiff's employment be terminated, on May 23, 2016, Plaintiff submitted her letter of resignation in lieu of termination to be effective on June 28, 2016.

93.    On June 23, 2016, Defendant Molisano directed Merritt Holly to escort Plaintiff out of the building, despite the fact that the Plaintiff's work day was not complete.

94.    The last person to be escorted out of the building upon termination was a former faculty member accused of possessing pornography on his school computer.

95.    In fact, another teacher, Janelle Engle, also resigned from her position during the 2015-2016 school year and was not escorted out of the building.

96.    In fact, Ms. Engle was allowed to continue her health coverage through the

11

end of the summer, while Cal-Mum terminated Plaintiff's health insurance at the end of June, 2016.

97.     There have been no teachers denied tenure in recent history.

98.     As a result of Defendants' conduct, Plaintiff has lost a significant amount of weight, was unable to eat or sleep, and was treated for anxiety issues.

## AS AND FOR PLAINTIFF'S FIRST CLAIM AGAINST CAL-MUM FOR RELIEF UNDER TITLE VII FOR UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

99.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

100.    By and through their course of conduct as alleged above, Defendant Cal-Mum and its agents willfully violated Title VII, 42 U.S.C. § 2000e et seq., by subjecting Plaintiff to a hostile work environment, discriminating against the Plaintiff, and denying her equal terms and conditions of employment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

101.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SECOND CLAIM AGAINST CAL-MUM FOR RELIEF UNDER TITLE VII FOR UNLAWFUL RETALIATION

102.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

103.    By and through their course of conduct as alleged above Defendant Cal-Mum and its agents willfully violated Title VII, 42 U.S.C. § 2000e et seq., by retaliating against the Plaintiff.

104.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF
## UNDER SECTION 1983 AGAINST DEFENDANTS MOLISANI
## MOLISANI AND ESTABROOKS FOR UNLAWFUL
## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

105.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

106.    By and through their course of conduct as alleged above, the Defendants, Estabrooks and Molisani, violated Section 1983 by subjecting the Plaintiff to a hostile work environment, discriminating against the Plaintiff, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex, and thereby depriving her of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

107.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST
## DEFENDANTS CAL-MUM, MOLISANI AND ESTABROOKS
## FOR AIDING AND ABETTING UNLAWFUL DISCRIMINATION

108.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

109.    By and through their course of conduct as alleged above, the Defendants willfully violated the Human Rights Law by aiding and abetting the unlawful discrimination and hostile work environment against the Plaintiff based on her sex and gender.

110.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF
## UNDER THE NEW YORK STATE HUMAN RIGHTS
## LAW AGAINST DEFENDANTS CAL-MUM, MOLISANI
## AND ESTABROOKS FOR RETALIATION

111.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

112.    By and through their course of conduct as alleged above, the Defendants willfully violated the Human Rights Law by harassing and treating the Plaintiff differently in retaliation for her complaints of harassment and for refusing to respond favorably to Discriminatory Conduct.

113.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that this Court:

(a)     Accepts jurisdiction over this matter,

(b)     Accepts impanels and charges a jury with respect to the claims for relief; and

(c)     Awards the following damages against Defendants:

i.      Back pay, front pay, and all benefits along with pre and post judgment interest, in amounts to be determined at trial;

ii.     Punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional and physical distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination in employment is repulsive to legislative enactments, in amounts to be determined at trial;

iii.    Attorneys' fees, costs, and expenses as provided for by the applicable statutes; and

iii.     Any other relief which this Court deems just and proper.


Dated:          November 15 2017
                Rochester, New York

                                              UNDERBERG & KESSLER LLP


                                              /s/ Jennifer A. Shoemaker

                                      By:     _____
                                              Jennifer A. Shoemaker, Esq., of Counsel
                                              Attorneys for Plaintiff
                                              300 Bausch & Lomb Place
                                              Rochester, New York 14604
                                              Telephone: (585) 258-2800
                                              Email: jshoemaker@underbergkessler.com